ABRAM C. WISNER, Respondent, v. EDWARD H. JEWETT, Appellant.

First Department, July 6, 1925.

Contracts — consideration — action to recover on alleged contract to deliver stock to plaintiff in consideration of his surrender of option agreement to defendant — evidence shows that option had expired before contract was made and that defendant did not have knowledge of expiration — option was not extended by implication — plaintiff did not surrender any supposed rights to defendant — no consideration shown for contract.

In an action to compel the defendant to transfer certain shares of stock which the plaintiff alleges the defendant agreed to transfer to him in consideration of the plaintiff surrendering an option which he held for a larger block of stock, which the defendant ultimately purchased from those who gave the alleged option to the plaintiff, the evidence shows that at the time the contract was made between the plaintiff and the defendant, the option held by the plaintiff had expired through his failure to meet the terms thereof, and that at that time the defendant was not aware that the option was not in force, and, therefore, there was no consideration for the contract executed between the plaintiff and the defendant, and the plaintiff is not entitled to recover.

There was no extension of the option held by the plaintiff by implication and he did not surrender any supposed rights to the defendant at the time of the execution of their agreement which would constitute consideration for that agreement.

APPEAL by the defendant, Edward H. Jewett, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 23d day of October, 1924, upon the decision of the court rendered after a trial at the New York Special Term.

The judgment directs that defendant assign, transfer and deliver to plaintiff 8,943 shares of the capital stock of the DeForest Radio Telephone and Telegraph Company.

*Paul M. Abrahams* [*I. Maurice Wormser* of counsel], for the appellant.

*Satterlee & Canfield* [*R. Randolph Hicks* of counsel; *Stephen H. Hammond* with him on the brief], for the respondent.

McAvoy, J.:

Plaintiff pleaded in this action that he had an option contract with three individuals known as Keator, Gilbert and DeForest, dated October 11, 1922, in which they agreed to sell him 114,995$\frac{5}{7}$ shares of the DeForest Radio Telephone and Telegraph Company, and that this option interest or contract was in effect until and including March 16, 1923. He then set out that on the 19th

of February, 1923, the defendant agreed to purchase, with the plaintiff, the aforesaid shares of stock and to pay therefor the purchase price so contained in the option agreement of October 11, 1922; that plaintiff promised and agreed to relinquish and surrender to the defendant all of plaintiff's rights and interest as a purchaser under this contract of October 11, 1922, for a consideration of $150,000, which the defendant agreed to pay plaintiff upon the surrender by plaintiff to the defendant of the plaintiff's rights and interest under the option contract of October, 1922, and upon the purchase by the defendant of the shares of stock covered by said contract. He further pleads that on the 16th of March, 1923, he surrendered all his rights under the contract of October 11, 1922, and pursuant to such surrender the defendant and Keator, Gilbert and DeForest, with the consent of the plaintiff herein, entered into a contract by which defendant purchased all of the aforesaid number of shares of stock. It is then set out that the provisions for the payment of the sum of $150,000 by defendant to plaintiff were modified by a parol agreement by which defendant promised to transfer 8,943 shares of the stock of the DeForest Radio Telephone and Telegraph Company to the plaintiff in place of the former consideration. Plaintiff claims to have performed all of the terms and conditions of the contract of February 19, 1923, which he had made with defendant.

The judgment which was asked and granted was that the defendant assign and transfer to plaintiff the 8,943 shares of stock of the DeForest Radio Telephone and Telegraph Company.

The answer denies the allegations of the complaint, and by way of a separate defense sets forth that plaintiff represented to defendant on the date of the contract made between them on February 19, 1923, that he was the owner of the option agreement between himself and Keator, Gilbert and DeForest, and that it was then a valid and existing option between the aforementioned parties for the purchase of 114,995$\frac{5}{7}$ shares of the stock of the DeForest Radio Telephone and Telegraph Company.

Defendant sets forth that plaintiff said that he had expended large sums of money in continuing the option, and that plaintiff could assign the option agreement to defendant and that defendant under this option would receive from Gilbert, Keator and DeForest all of the rights and benefits accruing under the option agreement. The defense then asserts that at the time of making these representations of the validity and existence of the option agreement and that this assignment to defendant would carry the rights which the ·plaintiff had theretofore acquired, the fact was that the option agreement was canceled and had ceased to be in effect, and that

plaintiff knew at that time that this condition existed as to the option's expiration and did not communicate his knowledge to the defendant. The issue, therefore, was whether or not at the time of the promise to transfer the 8,943 shares made by the defendant to the plaintiff there was any valid or existing consideration moving from plaintiff to defendant for the promise.

We think that the proof shows that at that time there was no outstanding option in favor of the plaintiff, and that he knew that it had expired, and that the agreement to pay him these shares was wholly unfounded upon any promise which he could carry out. This is shown from these facts: The plaintiff and another had this option to purchase these shares from the three individuals, heretofore mentioned, for the sum of $656,500 in cash and an agreement to transfer to the sellers shares of stock of another company. The payments under that contract were prescribed in certain partial sums, one installment on the execution of the contract and $50,000 in monthly payments up to March, 1923, the balance amounting to $380,500 was required to be paid on the twenty-fifth of April of that year. The installment due one month after the contract was made, in November, 1922, was not paid, but an extension of time in which to make it was allowed to December 5, 1922. This sum, due in December, was not paid, and there was, of course, a lapse in any rights under the option agreement. On January 11, 1923, the option contract of October eleventh was reinstated, and plaintiff then became the sole purchaser, his former associate withdrawing. The $50,000 payment due in November was made payable under the new agreement on the 25th of January, 1923. This date of payment was extended so as to make the payment due on the seventh of February of the same year. On February 7, 1923, $5,000 was paid on account and a further extension of the agreement for payment was made, in which plaintiff agreed to pay part in the month of February and the balance by March, ten subsequent payments to be made at the rate of $50,000 on the twenty-fifth of each month, beginning the twenty-fifth of March and continuing until the full purchase price was completed on June 25, 1923. The extension agreement contained this statement: " It is further agreed that the failure to make the payment on February 26, 1923, or the failure to make any subsequent payments provided herein, shall act as a forfeit of the payments made by the buyer and as a full release to the sellers above mentioned."

The amounts under the option that had been paid up to February 7, 1923, amounted to $31,000. Under the terms of the agreement and the extensions a considerable sum beyond this had become

First Department, July, 1925. [Vol. 213

due. Plaintiff thereafter met the defendant in Detroit about the eleventh of February and negotiated with him up to the nineteenth of February, and plaintiff claims that on that date he made an agreement with the defendant under which defendant was to purchase plaintiff's option agreement or help him to raise the money necessary to carry out the optional agreement. There is no dispute that at that time there was an agreement by the plaintiff to turn over his option to the defendant, and upon the part of the defendant to give plaintiff $150,000 in cash or the equivalent in stock. Plaintiff, however, did not show the defendant his option at the time of this agreement, nor indicate during his visit and arrangement with defendant in Detroit what the date of the expiration of the option was.

When plaintiff returned to New York a $20,000 payment required under the extension of February 7, 1923, became due, and on February twenty-sixth a further extension was executed under which the individuals Keator, Gilbert and DeForest were given a two-day extension to deposit their 114,995$\frac{5}{7}$ shares of stock with the trust company, as was required under this contract. When this agreement of extension was made, plaintiff gave to the owners of the stock which he was purchasing under the option a check for $20,400 which was to cover the payment due on the twenty-sixth of February, together with charges for revenue stamps, exchange, etc. This check of plaintiff, however, was never paid, and plaintiff was notified that the option would be canceled if the check was protested. Thereafter it was protested, and a notice was given to plaintiff that his option had lapsed, and that the individuals Keater, Gilbert and DeForest considered it canceled. Thus at that time there was no option agreement in existence which plaintiff could sell to the defendant. It is apparent that plaintiff considered his option had lapsed as early as March 12, 1923. This was conceded on the trial, or at least that date was accepted as the expiration of the option.

On the 15th of March, 1923, defendant came to New York, and on the sixteenth he had a conference with the sellers of the option and with plaintiff. At this conference defendant discussed the terms upon which he would purchase these very shares of stock of the DeForest Radio Telephone and Telegraph Company, which plaintiff had had an option theretofore to purchase. Plaintiff was present at this conference, but took no active part therein. The explanation for his presence was that the sellers of the option, Keator, Gilbert and DeForest, supposed that Wisner was to receive some sort of commission from defendant for the work he was doing, and for that reason thought that it was proper for him to be present

at the conference between defendant and the representatives of
the DeForest Radio Telephone and Telegraph Company.   Defend-
ant assumed that plaintiff was attending the conference for the
purpose of surrendering his option agreement which defendant did
not know had lapsed through plaintiff's default in failing to make
the payment of February twenty-sixth.   However, at this confer-
ence, during which defendant, Keator, Gilbert and DeForest came
to terms, plaintiff did not make any formal or informal release of
any rights he had, nor on April second when the formal written
agreement was entered into between the defendant and Keator,
Gilbert and DeForest, was there any surrender or release either
asked from or given by plaintiff to the defendant of any rights which
he was supposed to possess or to which he believed himself to be
entitled.   Nobody requested him to sign any release or cancel
any agreement or become a party to the contract made at this
conference.   The defendant and the three individuals entered
into an entirely independent contract which was reduced to
writing on April second.   On March sixteenth, the date of the
conference at which the agreement between the defendant and the
three owners of the shares of stock was had, plaintiff had nothing
to surrender and released nothing.   Plaintiff also subsequent to
this transaction indicated a totally diverse position to that which
he now assumes in an action commenced against Keator, Gilbert
and DeForest on the ground that, prior to March 16, 1923, Keator,
Gilbert and DeForest and plaintiff and his partner Reynolds, had
agreed that the option agreement as then held by plaintiff be
canceled and annulled, and that Keator, Gilbert and DeForest
should enter into a new agreement with Jewett, the defendant,
for the sale to him of the identical stock covered in the October
eleventh agreement, and that the purchase price to Jewett should
include the $31,000 paid by plaintiff, and also the sum of $13,500
which plaintiff claimed for the expenses incurred in attempting to
exercise the option.   It was set forth in that suit that the defend-
ants promised and agreed, in consideration of plaintiffs' services
and disbursements and the cancellation of their rights in and
under the aforesaid agreement, to refund to them, upon the closing
of a contract with the said Jewett, the sum of $44,500.   In one
claim he says that the option agreement was in force and effect
in March, 1923, and in the other claim he says that it was agreed
between him and the owners of the stock, prior to that date, to
cancel the agreement and charge the defendant with an additional
sum over the purchase price so that plaintiff would recover the
moneys that he had spent in his endeavor to carry out his option
agreement.   Subsequent to the agreement of April second, in

which defendant obtained the option to purchase the DeForest Company's stock, defendant gave plaintiff a letter in which he agreed to give him, for the surrender of his agreement, 8,943 shares of stock, but at this time defendant did not know that plaintiff did not have any rights to surrender at the time of the agreement which he made for the purchase of the stock. Defendant's position in respect to this letter of April 4, 1923, is that, as plaintiff's option had expired before the time came for him to surrender his rights, and defendant had no knowledge of the facts, he is under no legal obligation to carry out his agreement since there was actually nothing which plaintiff surrendered at the time of the receipt of defendant's promise.

The learned trial court below found that, although plaintiff's option expired by its terms on February 28, 1923, the date upon which he gave a bad check, which was subsequently returned, such option nevertheless continued by implication so as to be in full force and effect on March sixteenth, the day of the conference between the parties, and that plaintiff by acquiescence in the new option which defendant secured, impliedly relinquished his then rights and interest in the option, which rights and interest were recognized by defendant by implication. There is nothing in the pleadings nor in the evidence upon which these findings can be justified. Plaintiff's option was not extended by any implication that arises from any facts proven here, nor did it appear from any proof of any inference derived therefrom that plaintiff by acquiescence in the new agreement made between defendant and Keator, Gilbert and DeForest impliedly surrendered and relinquished his rights, nor can it be found from the proof that plaintiff supposed on March sixteenth that he had any rights to relinquish. There were three matters of proof which plaintiff, according to his pleading, was required to make: (1) That he entered into an agreement on February 19, 1923, with defendant to transfer to him his option agreement of October 11, 1922; (2) that on the 16th of March, 1923, he surrendered his rights in this option agreement, and (3) that a modification was made whereby he was to receive 8,943 shares of stock of the DeForest Radio Telephone and Telegraph Company, instead of $150,000 cash as originally agreed.

The first matter, the proof of an agreement, was conceded by defendant. The second matter, that is, that the option agreement was in effect on March 16, 1923, and that on that date he surrendered his rights thereto was not proven. It was conceded in the record that the option agreement had lapsed and was canceled prior to March 12, 1923, because of his failure to make the payments required under the option agreement. There was no dispute in

effect by plaintiff or otherwise that his sellers had notified him that they would not wait for the payments due thereunder. On the 16th of March, 1923, therefore, there was no option to surrender, and there was a failure of proof on this distinct allegation that plaintiff surrendered his rights on that date. Nor was there any proof that on the 16th of March, 1923, the date of the final agreement, between defendant and the owners of the stock for its transfer to him, there was any release, cancellation or surrender of any rights of the plaintiff to defendant as alleged in the complaint. It was, therefore, not within the power of the court under these pleadings to adopt the theory that by implication the defendant here and the prior owners of the stock extended plaintiff's option agreement by recognition so that the same was in effect on March 16, 1923, and that plaintiff by acquiescing in the agreement entered into between defendant and the owners of the stock surrendered his supposed rights in his option agreement to defendant, and that, because a surrender of supposed rights is a sufficient consideration for a promise, plaintiff could have judgment under an allegation that his option agreement survived. This theory was neither alleged in the complaint nor will the facts justify its conclusion as matter of law.

There was no conduct either on the part of defendant or on the part of the sellers of the option which would warrant a finding that they impliedly extended plaintiff's option agreement. Nor was there any element of estoppel present in the negotiations whereby the defendant would be precluded from asserting that no consideration moved to him from the plaintiff. Nothing that plaintiff did in the conference of March 16, 1923, indicated that he was supposedly relinquishing his rights by acquiescence in the new agreement. In fact, the new agreement provided an increase of $13,500 of the purchase price for moneys said to have been expended to reimburse plaintiff for the expenses incurred during the months he was endeavoring to exercise his option. There was nothing in the nature of the payments under the new agreement which indicated that defendant received any benefit of payments made by plaintiff under his option agreement of October eleventh. No credit was given to defendant for these payments. He paid the same price with the above-mentioned $13,500 additional. The very nature of the complaint which the plaintiff made against Keator, Gilbert and DeForest for the return of his payments and reimbursements of his expenses indicated that he had no idea when he attended the conference of March 16, 1923, of surrendering any option agreement.

43

There being no proof that there was any extension by the sellers of this option agreement of plaintiff by implication, or that he surrendered any supposed rights to defendant at the time of the execution of the new agreement, there was a lack of consideration for any promise then made, and besides since there was a complete failure to set forth a cause of action based upon any such theory, there was in law a failure of proof affecting the whole cause of action and the complaint should, therefore, have been dismissed.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, MERRELL and BURR, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.