ABRAM C. WISNER and Another, Appellants, v. LEE DeFOREST and Others, Respondents.

First Department, May 6, 1927.

Contracts — consideration — one of plaintiffs was in default on purchase of voting trust certificates — plaintiff, after paying $31,000 on account of purchase price plus $13,500 for patents, at defendants' request procured purchaser of stock — agreement by defendants to refund amount paid was on good consideration — plaintiffs established prima facie case — error to direct verdict for defendants.

This is an action to recover for services rendered in the sale of certain stock. The plaintiffs agreed to purchase the stock for $656,500 and to pay therefor in installments. One of the plaintiffs paid $31,000 on the stock and subsequently $13,500 for patents which he agreed to procure. After said plaintiff was in default he procured a third person to purchase the shares at the same purchase price that he agreed to pay, plus the amount that he paid for the patents. Plaintiff's evidence makes a *prima facie* case to sustain his allegations that the defendants agreed to refund the amount he paid on the stock and the amount he paid for the patents in case he procured a third person to purchase the stock at a sum equal to both amounts. It was error, therefore, for the court to direct a verdict for the defendants at the close of the plaintiffs' case, the defendants having rested on plaintiffs' case.

APPEAL by the plaintiffs, Abram C. Wisner and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 2d day of July, 1926, upon the verdict of a jury rendered by direction of the court, as amended by an order entered in said clerk's office on the 29th day of July, 1926, and also from an order entered in said clerk's office on the 16th day of July, 1926, denying plaintiffs' motion for a new trial made upon the minutes.

R. Randolph Hicks of counsel [Lloyd F. Thanhouser with him on the brief; Satterlee & Canfield, attorneys], for the appellants.

Samuel Seabury of counsel [George Trosk with him on the brief; Fisher & Deimel, attorneys], for the respondents.

PROSKAUER, J. The plaintiffs appeal from a judgment entered in favor of the defendants upon mutual motions made at the con-

clusion of the trial for the direction of a verdict, the defendants having rested upon the plaintiffs' case.

On October 11, 1922, the plaintiff Wisner and one Reynolds agreed to buy and the defendants to sell certain voting trust certificates representing shares of stock of the DeForest Radio Telephone and Telegraph Company; the buyers were to pay $656,500 in installments and to procure a license under certain patents issued to General Squier; this license and the voting trust certificates were then to be transferred to a corporation to be formed, the new corporation to issue stock to both sellers and buyers. Subsequent agreements eliminated Reynolds and extended Wisner's time for performance. Prior to March 12, 1923, when Wisner was finally in default and ceased to have any rights under this agreement (*Wisner* v. *Jewett*, 213 App. Div. 667), Wisner had paid to the defendants $31,000 on account of the purchase price and had expended $13,500 in the purchase of the Squier patents. As the time of his default approached and as, despite frequent extensions granted him by the defendants, he found himself unable to perform, Wisner endeavored to and finally succeeded in bringing about an agreement on March 16, 1923, by which one Jewett purchased the stock from the defendants for $670,000, this being the amount of the original purchase price, plus the $13,500 which Wisner had expended for the license. In the complaint it is alleged that at the special instance and request of the defendants Wisner " used his best efforts and endeavors to get other and additional parties interested in the purchase of said " stock; had carried on negotiations with Jewett and endeavored to procure Jewett as a purchaser; that Jewett executed the agreement of purchase, and that the defendants agreed in consideration of his services and disbursements and the cancellation of his rights under his agreement with the defendants to refund to him the $31,000 which he had paid under the original agreement and the extra payment of $13,500 which the defendants were securing from Jewett and which he claimed had been added to the purchase price in order to enable the defendants to reimburse him, without loss to themselves, for the payment he had made to Squier.

The plaintiff could give no consideration in the form of a surrender of his rights under his original agreement with the defendants because those rights had lapsed; but if he rendered, at defendants' request, services in procuring Jewett as a purchaser, his agreement to accept for this service a refund of the $44,500 which he had expended on the original contract was a sufficient consideration to support a promise by the defendants to pay him that sum. His uncontradicted evidence makes out a *prima facie* case to sustain

these allegations. He first informed the defendants on February 15 or 16, 1923, of the opening of his negotiations with Jewett. He telephoned to the defendant Gilbert on February 21, 1923, that he had substantially concluded an agreement with Jewett, subject to verification by public accountants of a statement of operations which had been given to him by the defendants, and requested them to facilitate the examination of the books by the accountants. On February 26, 1923, he informed two of the defendants, De Forest and Gilbert, that he had procured a tentative agreement from Jewett to purchase the property for $670,000, instead of $656,500, and stated: " If it so happened that he wanted the contract direct with them, that I wanted them to pay me back the $31,000 which they had received and, in addition, the $13,500 which I had expended." He continues: " They said they would return the money, and Dr. De Forest said that in view of what I had done " they would similarly return it if the sale were made at that price to any one else. Acting upon this incentive the plaintiff renewed his efforts to bring about the sale to Jewett. Meanwhile, in the endeavor to hold his own option open, he had given a check for $20,000 to the defendants, which he explained to them he could not presently meet until funds were forthcoming from an associate of Jewett's, from whom he had the expectation of securing the money if the accountants' report were favorable. Difficulties arose over the accountants' report, with the result that Wisner was unable to make good his check. Both Gilbert and Keator instructed him to " go ahead and put the deal through," Keator saying: " Forget the check, go on and close up the deal with Jewett." Negotiations continued between the parties up to and including March sixteenth, the plaintiff taking an important part in smoothing out differences between Jewett and the defendants and in bringing them to a point of common accord. On the fifteenth of March, while the parties were negotiating, Keator once referred to the price as $656,500 and the plaintiff immediately corrected it and said that the price was $670,000, and continued: " I made the brief explanation that the $13,500, the difference, was made up of money paid to others." He thus significantly drew attention to this addition to the purchase price, which he claims was intended to cover his expenditures. On the night of March fifteenth, after certain changes had been tentatively agreed upon between Jewett and the defendants Keator and Gilbert, in the absence of Dr. De Forest, the plaintiff stated to Keator and Gilbert: " That means the sale of this property, and I want a definite agreement from you men ＊ ＊ ＊ if this deal goes through tomorrow, that you are going to carry out your arrangements with me, and

pay me back the $31,000 which I paid you and that you are going to turn over to me, when you receive it from Mr. Jewett, the $13,500 which is added to the option price." To this Keator replied that he would agree to this arrangement which, as he learned from Gilbert, the two codefendants had agreed to at the Pennsylvania Hotel on February twenty-sixth. The parties met the next day; the agreement between Jewett and the defendants was consummated; there was again conversation about the refund to the plaintiff. Keator urged that the defendants should not pay this money at once, but only *pro rata* as they received payments from Jewett, and the plaintiff acquiesced in this modification.

On this proof it was error to direct a verdict for the defendants. We order a new trial so that the defendants' version of the transaction may be given, if they are so advised, and any possible questions of credibility may be determined by the trial court.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellants.

DOWLING, P. J., MERRELL, MARTIN and O'MALLEY, JJ., concur.

Judgment and order reversed and a new trial ordered, with costs to the appellants.